**In re L & S INDUSTRIES, INC., Debtor.**

**Elaine T. WILLIAMS, Executor of the Estate of Gary Williams, Plaintiff,**

**v.**

**Lawrence J. STEFAN, Judith Stefan and L & S Industries, Inc., Defendants.**

**Bankruptcy No. 81 B 14558. Adv. No. 90 A 0628.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 9, 1991.

Ralph E. Brown, Judith L. Borden, Schuyler, Roche & Zwirner, Chicago, Ill., for plaintiff.

Richard W. Hillsberg, Tishler & Wald, Chicago, Ill., for defendants Stefans.

David E. Cohen, Cohen & Krol, Chicago, Ill., for defendant L & S Industries, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND STEFANS' MOTION FOR ABSTENTION

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Elaine T. Williams ("Plaintiff"), Executor of the Estate of Gary Williams ("Williams"), has moved to enjoin Lawrence J. Stefan and Judith Stefan (the "Stefans"), along with Debtor L & S Industries, Inc. ("Debtor", "L & S")[1] (collectively the "Defendants"), from prosecuting various counterclaims and affirmative defenses in an action initiated by Plaintiff which is pending in the Circuit Court of Cook County, Illinois, Law Division, No. 83L4090 (the "State Court Action") ("Plaintiff's Mo-

tion"). The Stefans have moved this Court to abstain from hearing this matter.

Trial was held on the Motion for Preliminary Injunction and the Motion for Abstention. Evidence was admitted and final argument heard. The Court now makes and enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

The following facts are stipulated, otherwise uncontested, or are part of the record of proceedings herein:

1. On November 6, 1980, Gary Williams entered into an agreement with L & S and Lawrence Stefan ("Agreement"). At the time of the Agreement, Gary Williams held shares of L & S individually and as trustee under a Declaration of Trust. Gary Williams cumulatively held 500,000 shares which represented fifty percent of the outstanding shares of L & S.

2. At the time of the Agreement, Lawrence Stefan was secretary of L & S. He and his wife, Judith Stefan, were two of its directors. Gary Williams was president of L & S while his wife, Elaine Williams, was treasurer. Both of the Williams's were also directors.

3. The Agreement provided that Gary Williams would sell all of his stock in L & S: 416,666 shares to L & S and 83,334 shares to Lawrence Stefan. The Stefans were personally and unconditionally to guarantee payment of a promissory note dated November 20, 1980 in the amount of $750,000 payable by L & S to Gary Williams ("Note").

4. The Note provided for payment of the purchase price in three equal installments of $250,000, plus accrued interest, the first installment being due one year from the closing date of November 20, 1980.

5. The Agreement was executed and the Note was delivered to Gary Williams by L & S. Pursuant to the Agreement, the Stefans delivered to Gary Williams their

---

1. The Court addresses Plaintiff's Motion with regard to the Stefans only, since trial on the same Motion against L & S has not taken place.

personal written guaranty, guaranteeing payment of the indebtedness of L & S as evidenced by the Note.

6. Debtor failed to pay the first installment due under the Note on November 21, 1981.

7. On November 23, 1981, L & S filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code ("Code"). At the time of the filing, Lawrence Stefan remained president, director, and sole shareholder of Debtor, while Judith Stefan remained an officer and director.

8. On May 4, 1982, Gary Williams filed an adversary complaint in the bankruptcy proceeding, No. 82 A 1620, seeking in part to modify the automatic stay pursuant to Section 362(d) of the Code in order to pursue his claims against the Defendants pursuant to. the Note ("Adversary Proceeding").

9. Neither Lawrence Stefan nor Judith Stefan was named as a party in the Adversary Proceeding, nor did they file appearances.

10. At all times during the Adversary Proceeding, Lawrence Stefan was sole shareholder of Debtor, and he and Judith Stefan were officers and directors.

11. Debtor filed an answer, affirmative defenses, and counterclaims in the Adversary Proceeding, all of which were based substantially upon the alleged wrongful conduct of Gary Williams.

12. While the Adversary Proceeding was pending, in 1983 Gary Williams filed the State Court Action against the Stefans to enforce the Stefans' guaranty of the Note. Debtor intervened in the State Court Action as an additional defendant-counterplaintiff, and both the Debtor and Stefans filed affirmative defenses and counterclaims in the State Court Action. The various affirmative defenses and counterclaims were based substantially upon the alleged wrongful conduct of Gary Williams individually and through his agents. In the State Court Action, Debtor and the Stefans have been represented at all times by the firm of Peck & Wolf.

13. With respect to their affirmative defenses and counterclaims, the Defendants'

allegations included the following: that Gary Williams fraudulently induced Defendants to enter into the Agreement via false representations; that Gary Williams had concealed acts of mismanagement and accompanying financial loss with regard to Debtor; that Gary Williams unfairly competed with Debtor and employed wrongful methods in doing so; that as a result of the wrongful conduct, Debtor was unable to fulfill its obligations under the Note; and, that Gary Williams' conduct constituted a breach of fiduciary duties owed to Debtor and its directors, fraud, breach of the express terms of the Agreement, tortious interference with existing contractual relations, and unfair competition.

14. The affirmative defenses and counterclaims asserted by Debtor in the Adversary Proceeding arose out of the same transactions as those affirmative defenses and counterclaims filed by the Stefans and Debtor in the State Court Action.

15. The bankruptcy case was converted to a Chapter 7 proceeding on May 15, 1985. The following day Lawrence M. Cooper was appointed Trustee ("Trustee").

16. During the pendency of the State Court Action and the Adversary Proceeding, Gary Williams died and Elaine Williams was substituted as Plaintiff in both proceedings.

17. On or about October 26, 1986, Trustee Cooper was authorized to substitute as party defendant and counterplaintiff in the Adversary Proceeding.

18. Lawrence Cooper withdrew as Trustee effective May 14, 1987; Joseph Stein was appointed successor Trustee on September 14, 1987.

19. On or about March 17, 1988, Trustee Joseph Stein filed his Motion to Abandon Claim and for Dismissal of Adversary Complaint ("Trustee's Motion").

20. On April 22, 1988, this Court entered an Order granting Trustee's Motion ("Order"). Pursuant to Trustee's abandonment, and because the case had by then been extensively litigated over many years, the Order dismissed Trustee's counterclaim against Plaintiff with prejudice. The Court

also ordered Trustee to cause any claims pending "on behalf of the Estate against the Estate of Gary Williams" in any other court to be dismissed with prejudice. In addition, the Order allowed Plaintiff's claim against Debtor.

21. No appeal was taken from the Order and a subsequent order was entered closing the Adversary Proceeding on May 13, 1988.

22. Following entry of the Order, the Stefans have continued to pursue in the State Court Action their affirmative defenses and counterclaims.

23. On or about June 28, 1988 Plaintiff filed in the State Court Action a motion to dismiss the affirmative defenses and counterclaims filed by Debtor and the Stefans on grounds that the claims were barred by the res judicata effect of this Court's Order.

24. On October 7, 1988, Judge Sodaro of the Circuit Court of Cook County ordered that any defenses which were derivative of the Debtor's claims would be stricken and that any defenses which were personal to the Stefans would be allowed to stand.

25. On or about June 23, 1989 Plaintiff filed a second motion to dismiss on grounds that the affirmative defenses and counterclaims of the Stefans were in fact claims of the Debtor which had been barred by res judicata. On November 14, 1989, Judge Sodaro denied the second motion to dismiss without reaching the issues of identity of parties or whether the Stefans were in privity with the Debtor or Trustee.

26. In April of 1990, Plaintiff filed a motion for reconsideration of Judge Sodaro's November 14, 1989 order. On June 13, 1990, Judge Sodaro entered an order continuing the motion for reconsideration to the extent that the Stefans' claims and defenses were found to be derivative of Debtor's. The order otherwise denied the motion.

27. As of the date of these Findings, Judge Sodaro has not determined which, if any, of the Stefans' claims and defenses are derivative of the claims and defenses of Debtor.

28. In addition, the Stefans' motion for summary judgment on their first affirmative defense and two counts of their counterclaim, along with Plaintiff's cross-motion for summary judgment on the second count, are still pending in the State Court Action.

29. On July 11, 1990, Trustee filed his Final Report and Account in which he stated that $3,504.46 remained in receipts which he proposed to use for the payment of Trustee's and attorneys' administrative expenses. The bankruptcy case has now been fully administered and will shortly be formally closed if that has not already been done by the Clerk.

30. On or about August 27, 1990, Plaintiff filed the present Motion for Preliminary Injunction ("Plaintiff's Motion"). Plaintiff argues that this Court should enjoin the Stefans from pursuing their claims in the State Court Action on grounds that the claims are barred due to the res judicata effect of the Court's previous dismissal with prejudice of Trustee's claims.

31. The Stefans respond to Plaintiff's Motion by contending that this Court lacks jurisdiction to hear this matter, and that the doctrine of res judicata is inapplicable due to the absence of privity between the Trustee and Stefans at the time the Order was entered.

32. In addition, on or about October 9, 1990, the Stefans filed their Motion for Abstention ("Stefans' Motion") requesting that this Court abstain from hearing this matter in the interests of comity with the state court in the State Court Action. The hearing on the latter motion was consolidated with the hearing on the application for preliminary injunction.

33. Statements of the Court from the bench on October 25, 1990, following trial on motion for preliminary injunction and motion for abstention, and any fact findings contained in the Conclusions of Law, will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

#### A. *Jurisdiction*

1. United States district courts have subject matter jurisdiction over cases un-

der Title 11 and proceedings arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each district court is authorized to refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In the Northern District of Illinois, such referral has been made pursuant to Local Rule 2.33.

■ 2. In a core proceeding that arises in or under Title 11, a bankruptcy judge is empowered to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). The Court has core jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(A). This is an action to enforce a previous Order of the Court and as such constitutes a matter concerning administration of the estate within the meaning of § 157(b)(2)(A). Because the Adversary Proceeding involved claims of the estate against creditor Gary Williams, the Court originally had core jurisdiction to enter the Order dismissing those claims with prejudice. 28 U.S.C. § 157(b)(2)(A). Consequently, the Court now retains its core jurisdiction in administrative matters to enforce its prior judgment.

3. Furthermore, this Court has ancillary core jurisdiction to enjoin the State Court Action in order to protect or effectuate the judgment entered in the Adversary Proceeding over which it originally had jurisdiction. In *Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45 (7th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977), the court found in light of 28 U.S.C. § 2283 and its relitigation exception,[2] that a federal court may protect parties from relitigation in a state court of issues already determined in the federal proceeding. *Id.* In finding that no independent basis for jurisdiction was necessary in such an action, the *Ennis* court cited *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 696, 78 L.Ed. 1230 (1934):

> That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court ... to secure or preserve the fruits and advantages of a judgment or decree ren-

dered therein, is well-settled.... The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause....

4. Thus, this Court has jurisdiction to enjoin the State Court Action in order to effectuate its previous Order. In addition, because "the jurisdiction of the court follows that of the original cause" and the Court had core jurisdiction to issue the Order, this Court retains its original core jurisdiction for purposes of this proceeding. *See Ennis*, 542 F.2d at 48, citing *Local Loan*, 292 U.S. at 239, 54 S.Ct. at 696.

### B. *Res Judicata Standards*

■ 5. Plaintiff contends that the Court's Order of April 22, 1988 is res judicata of the affirmative defenses and counterclaims asserted by the Stefans in the State Court Action. Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In order for the preclusive effect of res judicata to apply, several elements must be found: a) there must have been a previous, final judgment on the merits; b) involving the same causes of action; c) between the same parties or their privies. *Church of the New Song v. Establishment of Religion*, 620 F.2d 648, 652 (7th Cir.1980), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981).

### *The Order Was a Final Judgment On the Merits*

■ 6. The Order of April 22, 1988 was a final judgment on the merits for res judicata purposes. It is well-settled that a dismissal with prejudice is a final adjudication on the merits and will bar a subsequent suit brought on the same cause of action: "[a] judgment of dismissal with prejudice gives the defending party the basic relief to which he is entitled as to the claim so dismissed.... such a dismissal

---

**2.** "A court of the United States may not grant an injunction to stay proceedings in a State court except ... where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

operates to bar another action on the claim that was dismissed with prejudice." 1B Moore's Fed.Prac. ¶ 41.05[2]; *see also Schwarz v. Folloder,* 767 F.2d 125 (5th Cir.1985); *Brooks v. Barbour Energy Corp.,* 804 F.2d 1144 (10th Cir.1986). Res judicata applies even if the dismissal was the result of a settlement or compromise between the parties. *Cottle v. Wagner & Brown,* 1988 U.S. Dist. LEXIS 12454 (N.D. Ill.1988). Thus, this Court reached a final decision on the merits with regard to Debtor's claims in the Adversary Proceeding by issuing the Order of dismissal with prejudice in response to Trustee's abandonment of those claims following years of litigation on the matter.

### The Causes of Action in the State Court Action and the Adversary Proceeding Are Identical

7. There is no dispute that the affirmative defenses and counterclaims asserted by Debtor and the Stefans in the State Court Action are identical to those filed by Debtor in the Adversary Proceeding.

### Privity with the Stefans Was Lacking

8. Trustee was substituted as party defendant and counter-plaintiff in the Adversary Proceeding, and later abandoned Debtor's claims against Plaintiff. This resulted in the Court's dismissal of those claims. Therefore, privity must be found between Trustee and the Stefans at the time the Order was entered before that Order can have preclusive effect upon the Stefans' state court claims.

9. Although the Stefans and Debtor shared identical claims against Plaintiff arising from the same series of transactions, privity does not arise merely because the parties are interested in proving or disproving the same set of facts. *See In re Wilcher,* 56 B.R. 428, 439 (Bankr.N.D.Ill. 1985) (Martin, J.). Determination of who is in privity with a party requires a case-by-case analysis of the relevant facts and circumstances. *Id.* at 439.

10. Generally, privity in the res judicata sense involves a "person so identified in interest with another that he represents the same legal right" regardless of whether the person is a formal party of record. *Id.* at 438–39. Such identification in interest can be shown by two sets of circumstances which are relevant here: the interests of a person are placed before the court by one authorized to sue or defend on his behalf; or, a person with an interest in the outcome controls or shares control of a suit by another. *See* 1B Moore's Fed.Prac. ¶ 0.411[1] and cases cited. In the presence of these circumstances, such person is in privity with a party to a judgment and is therefore bound by that same judgment. *Id.*

11. In this case, Trustee was not authorized to abandon the Stefans' claims nor did he at any time plead the individual interests or claims of the Stefans before the Court in the Adversary Proceeding. Trustee was the representative of Debtor and the estate; no facts have been established from which the Court can even infer that Trustee represented the interests of the Stefans as individual guarantors of the Note to Plaintiff.

12. Plaintiff argues that because the Stefans were directors, officers, and in the case of Lawrence Stefan, a shareholder of Debtor, it must follow that the Stefans were therefore in privity with Trustee at the time the Order was entered. Plaintiff is mistaken. The fact that a person is a shareholder or officer of a corporation, without more, is insufficient to establish privity between the shareholder/officer and the corporation, let alone between a shareholder/officer and the trustee of a corporation in bankruptcy. *See Instrumentalist Co. v. Band, Inc.,* slip op., no. 86 C 6043, 1986 WL 13520 (N.D.Ill.1986) (in which the fact that certain persons were shareholders and officers of a party-defendant was held insufficient to establish privity for collateral estoppel purposes).

13. This case is even stronger on the latter point. A trustee in bankruptcy represents interests of the debtor's estate and its creditors, not the interests of the debtor's principals other than their interests as creditors of the estate. "The trustee's responsibility is to preserve and maximize the value of the estate for the benefit of the parties in interest, and not to safe-

guard the interest of the debtor's principals." *In re ABA Recovery Service, Inc.*, 110 B.R. 484, 488 (Bankr.S.D.Cal.1990): *see also In re Riverside–Linden Investment Co.*, 85 B.R. 107, 113 (Bankr.S.D.Cal.1988) ("While § 704(1) gives the trustee the duty to close the estate as quickly and expeditiously as is compatible with the best interests of the parties in interest, in a Chapter 7 case, the trustee is not charged with representation of general partners"). Such reasoning is particularly relevant here since the evidence shows that Trustee chose to abandon Debtor's claims against Plaintiff in order to close the bankruptcy proceeding. A mere $3,504.46 remained in the estate, which amount was intended for administrative expenses. Such purpose for Trustee's abandonment of claims, which resulted in the Court's dismissal of those claims with prejudice, is simply not attributable to the Stefans.

14. Plaintiff cites *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1986) and *C.I.S., Inc. v. Kann*, 76 Ill.App.3d 109, 31 Ill.Dec. 714, 394 N.E.2d 916 (2d Dist. 1979) in support of her contention that a bankruptcy trustee is in privity with the principals of a debtor corporation. However, these cases are easily distinguishable. *C.I.S.* was not a bankruptcy case and therefore did not involve a bankruptcy trustee. The *C.I.S.* court merely found privity between the president of a corporation and the corporation. In *Weintraub*, although the court examined the relationship between a bankruptcy trustee and a debtor corporation's shareholders, it did not do so within the context of considering privity for res judicata purposes. The *Weintraub* court merely found that the trustee had the power to waive the corporation's attorney-client privilege with respect to pre-petition communications. *Id.* Thus, in dicta stating that the fiduciary duty of the trustee "runs to shareholders as well as creditors," the Supreme Court opinion was clearly referring to the trustee's duties with regard to protecting the interests of the estate rather than the personal interests of the

shareholders. *See Id.* 471 U.S. at 355, 105 S.Ct. at 1994, 85 L.Ed.2d at 382. In fact, the court prefaced its remarks by commenting that the trustee's duty is to "maximize the value of the estate," and that the trustee possesses "wide-ranging management authority over the debtor" to which corporate directors must defer. *Id.* 471 U.S. at 352, 105 S.Ct. at 1993, 85 L.Ed.2d at 380–81.

15. It is clear that a bankruptcy trustee's duties do not include the representation of any interests of a principal that are not directly related to interests of the estate. Consequently, it cannot be said that interests of the Stefans were properly placed before the Court by Trustee, since Trustee did not have standing to represent them. *See* 1B Moore's Fed.Prac. ¶ 0.411[1] (parties who are bound to a judgment are those "persons whose interests are properly placed before the court by someone with standing to represent them...."); *Wilcher*, 56 B.R. at 438.

16. When a non-party to an action has control over the conduct of litigation, it is in privity with the party it controls and bound by the results of the litigation. *Fed. Sav. and Loan Ins. Corp. v. Ill. Dept. of Revenue*, 650 F.Supp. 1217, 1223 (N.D.Ill. 1986). Plaintiff, however, fails to show that the Stefans controlled or shared control over Trustee's conduct of the Adversary Proceeding. Indeed, Plaintiff has not demonstrated any participation by the Stefans with regard to Trustee's actions in the Adversary Proceeding, let alone actual control. *See Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir.1987) ("It is essential that the non-party have actual control.")

17. To find "actual control," it is not enough for res judicata purposes that a non-party is represented by the same law firm [3]; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; undertook some limited presentation to the court; or, participated in consolidated pretrial proceedings. *Id.* at 1174.

---

**3.** Although the Stefans and Debtor were both represented by Peck & Wolf in the State Court Action, the Stefans and Trustee were represented by different counsel in the Adversary Proceeding.

Plaintiff has not alleged or proved that any of the above events occurred. However, even if she had done so, such evidence would be insufficient to show that the Stefans had actual control over Trustee's litigation. Plaintiff simply has failed to plead or prove facts that meet her burden on the issue of control.

18. Because Plaintiff has failed to establish the element of control, the remainder of Plaintiff's cases regarding privity between a bankruptcy trustee and a debtor's principals are inapposite. Specifically, Plaintiff cites cases in which a finding of privity between a trustee and a principal was dependent upon a finding of control over trustee's conduct of litigation by the principal. *See e.g., Ennis,* 542 F.2d 45, 49 (7th Cir.1976) (in which the court found that a bankruptcy court judgment in favor of a trustee should be given preclusive effect in favor of certain non-parties in a state court proceeding because the non-parties had "participated in th[e] [bankruptcy] proceeding in some way necessary to the administration of the estate"); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 870 (5th Cir.1984) (in which the court found a major stockholder of a debtor corporation to be a party to the reorganization proceedings because he had a strong pecuniary interest in the outcome of the proceedings *"and ... [had] exercised substantial control over the litigation on behalf of [debtor]....")* (emphasis supplied); *BGW Assoc., Inc. v. Valley Broadcasting Co.,* 532 F.Supp. 1115, 1118 (S.D.N.Y.1982) (in which the court, in a non-bankruptcy proceeding, found that certain officers and directors were privies of the corporation because they had been "actively involved as witnesses in the litigation....").

19. Plaintiff has failed to show either that the interests of the Stefans were placed before the Court by Trustee or themselves, or that the Stefans exercised actual control over Trustee's conduct of litigation in the Adversary Proceeding. Therefore, Plaintiff has failed to show that the interests of Trustee and the Stefans were so closely aligned as to have constituted privity with regard to the Adversary Proceeding. Indeed, Plaintiff has in no way shown that the Stefans had a "full and fair opportunity to litigate" their claims against Plaintiff in the Adversary Proceeding. *See Wilcher,* 56 B.R. at 436 ("in order to assert the doctrine of collateral estoppel it must be established that the party sought to be bound (or his privies) had a full and fair opportunity to litigate the issues in question in the prior litigation"). Thus, in the absence of privity between Trustee and the Stefans, the Stefans were not parties in interest to the Court's previous Order and therefore are not barred by the doctrine of res judicata from litigating their claims in the State Court Action.

## C. *Preliminary Injunction Standards*

20. Ordinarily, a plaintiff seeking preliminary injunction bears the burden of establishing five necessary elements: lack of adequate remedy at law; irreparable harm if the preliminary injunction is not issued; that such harm if the preliminary injunction is not granted is greater than the harm defendant will suffer if the injunction is granted; a reasonable likelihood of prevailing on the merits; and, that the injunction will not harm the public interest. *Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986).

21. Plaintiff correctly asserts that usual equitable grounds for injunctive relief need not be shown in a proceeding to effectuate a prior judgment of the bankruptcy court or any other federal court. *See In re Chateaugay Corp.,* 93 B.R. 26, 29 (S.D.N.Y.1988); *In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 738 F.2d 209, 213 (7th Cir.1984); *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y.1987). However, the above-cited cases did not involve, as this case does, a plaintiff requesting a bankruptcy court to effectuate its own prior judgment by giving the judgment res judicata effect against non-parties. In such a situation, one usual requirement for injunctive relief remains necessary, namely whether plaintiff has shown likelihood of prevailing on the merits as to the assertion of res judicata effect.

22. If plaintiff cannot succeed on the merits by showing that the prior judgment should be given res judicata effect against non-parties, then the court is no longer

being asked to effectuate its own prior judgment. Of course, if plaintiff fails to succeed on the merits due to its inability to meet the elements of res judicata, plaintiff's request for injunctive relief must be denied. On the other hand, if plaintiff is able to show likelihood of success in meeting the elements of res judicata, the court is therefore being asked to effectuate its own prior judgment, and consequently the remaining grounds for injunctive relief need not be met.

23. As discussed above, Plaintiff here has failed to establish privity between the Stefans and Trustee, and therefore has failed to prove that the Order should be given res judicata effect against the Stefans. Thus, Plaintiff has not met even the minimum threshold established by the Seventh Circuit with regard to her chances of succeeding on the merits, namely that "plaintiff's chances are better than negligible." *Brunswick*, 784 F.2d at 271; *Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380, 387 (7th Cir.1984) ("we agree that the threshold is low.... [i]t is enough that 'the plaintiff's chances are better than negligible' "); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986). Because this Court has found that Plaintiff cannot meet the elements of res judicata against the Stefans, Plaintiff obviously cannot meet the requirement that she show some likelihood of success on that issue. Accordingly, Plaintiff's Motion for Preliminary Injunction is denied.

### D. *Abstention*

24. The foregoing analysis disposes of the request for preliminary injunction but does not dispose of the case against the Stefans which also seeks a permanent injunction and declaratory relief. The Stefans have moved this Court to abstain from any further hearing in this case pursuant to 28 U.S.C. § 1334(c)(2) or in the alternative, 28 U.S.C. § 1334(c)(1). As discussed below mandatory abstention is not required. However, permissive abstention is found to be particularly appropriate. Accordingly this Court will abstain from any further hearing concerning this case, including the application for permanent injunction and the declaratory action.

25. Mandatory abstention is addressed in § 1334(c)(2), which provides in part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

As the quoted language indicates, if the following four requirements are satisfied, a court, upon timely motion, must abstain: (1) the case is based on a state law claim or cause of action that although related to a case under Title 11, does not arise under Title 11 or arise under a case under Title 11; (2) there is no independent basis for federal jurisdiction for the claim other than the bankruptcy proceeding; (3) an action has been commenced in a state forum; and, (4) the case could be timely adjudicated in state court. *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.*, 97 B.R. 905, 907 (N.D.Ill.1989).

26. Because the claims of both the Stefans and Plaintiff before the State Court are based upon state law,[4] there is no independent basis for federal jurisdiction over these claims other than the bankruptcy proceeding. *See Bates*, 97 B.R. at 907; 28 U.S.C. § 1334(c)(2). In addition, the State Court Action was commenced five years ago and remains pending. However, there is nothing in the record which shows that the case cannot be timely adjudicated in the state court that is addressing it now. Indeed, were it not for Plaintiff's filings in this Court, the State Court Action could very well have been resolved by now.

27. However, because this Court has core jurisdiction to effectuate its own prior

---

**4.** The Stefans' claims arise from alleged wrongful conduct by Gary Williams and include claims of false representation, unfair competition, breach of fiduciary duties, fraud, and violation of the Illinois Business Corporations Act.

judgment, the case pending here is not under related jurisdiction and therefore fails to meet the first requirement for mandatory abstention under § 1334(c)(2). Thus, abstention is not mandated.

28. Discretionary abstention is addressed in 28 U.S.C. § 1334(c)(1), which provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

29. As discussed above, three of the four elements of mandatory abstention have been satisfied here. When most of the criteria for mandatory abstention have been met, bankruptcy courts should give "careful consideration whether it would be appropriate to exercise their discretion to abstain under § 1334(c)(1)." *In re Futura Indus., Inc.*, 69 B.R. 831, 834 (Bankr.E.D. Pa.1987).

30. If the connection between the bankruptcy court and the lawsuit at issue is limited or tenuous at best, such factor is significant in deciding that abstention from hearing the lawsuit would be appropriate. *Futura*, 69 B.R. at 835 ("[t]he limited connection, if any, between the ... bankruptcy and the lawsuit ... is a significant factor in [the court's] decision that this proceeding should be referred to state court"); *Crane v. Coan*, 95 B.R. 87, 90 (Bankr.N.D.Ill.1988) (DeWitt, J.) ("[w]here the dispute's relationship to the estate is tenuous at best, there is additional reason to abstain"). There is no connection between this bankruptcy case and Plaintiff's dispute with the Stefans, which sounds in state law. Indeed, the only basis for federal jurisdiction over Plaintiff's cause is the pendency of this bankruptcy case which is about to be closed, which is additional reason to abstain from this matter. *See In re Williams*, 88 B.R. 187, 190 (Bankr.N.D.Ill.1988) (Ginsberg, J.) (in which the court concluded that because the "only basis for federal jurisdic-

tion over [the] complaint is the pendency of the bankruptcy case" and because the resolution of the issue in the adversary proceeding was based solely on interpretation of Illinois insurance law, "in the interests of comity the resolution of the issue is best left to the Illinois state courts to decide"). Any connection there may be between this matter and the bankruptcy becomes even more attenuated upon closing of the bankruptcy case.

31. In light of the foregoing, this proceeding will have no effect on the bankruptcy estate. It is therefore entirely proper for this Court to abstain. *See Cooper v. Coronet*, 49 B.R. 312, 316 (Bankr.N.D.Ill. 1985) (Hertz, J.) ("If the proceeding will have no effect on the estate, it is proper to abstain"). Since this proceeding will have no effect upon the estate, it also follows that abstention over the proceeding will not "impede or disrupt the bankruptcy court's exclusive and non-delegable control over the administration of the estate," yet another factor which demonstrates the propriety of abstention. *See Republic Reader's Service, Inc. v. Magazine Service Bureau*, 81 B.R. 422 (Bankr.S.D.Tex.1987).

32. Resolution of any remaining issues between the parties here will be based solely on interpretation of Illinois law. The mere presence of state law issues is not enough to warrant abstention since "virtually every issue which arises within the context of a bankruptcy case involves state law to at least some degree." *Republic*, 81 B.R. at 427. Courts have found that abstention is best where there are novel or unsettled questions of state law to be decided. *See Williams*, 88 B.R. at 191. However, where a cause of action can be litigated in state court

> without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, *irrespective* of whether the legal issues present unsettled questions of state law. *Republic*, 81 B.R. at 426.

Thus, even if the issues here do not involve novel or unsettled questions of state law,[5]

---

**5.** It has not been contended here that the Stefans' claims, which include claims of false rep-

resentation, unfair competition, breach of fiduciary duty, fraud, and violation of the Illinois

such factor is inconsequential given the strength of the other factors present in this case.

33. In *Geschke v. CLDC Mgmt. Corp.*, 58 B.R. 176, 180–81 (Bankr.N.D.Ill.1985) (Schwartz, J.), the court found that abstention was proper due to "the total absence of any bankruptcy claims." The *CLDC* court stated that Congress had intended that purely state law claims be litigated in the state courts, and not in the bankruptcy courts. *Id.* As in the underlying case here, in *CLDC* the "entire gravamen of the causes of action asserted ... were state law claims" and had nothing to do with any bankruptcy statute or theory. *Id.* But for the bankruptcy, this cause would have been heard in the state court. Accordingly, abstention here is proper in order for the state court to hear these purely state law claims.

34. Finally, it must be said that events surrounding this proceeding present a classic situation where considerations of comity toward the state court have particularly serious weight. Plaintiff brought three motions in the state court to have the Stefans enjoined from pursuing their claims in the State Court Action. She was unsuccessful in each of those attempts. As a result, Circuit Judge Sodaro has spent much time and effort considering the issues only to have Plaintiff submit the very same issues to this Court. It is therefore in the best interests of justice and comity with the state court for this Court to abstain from hearing this matter. This Court will not encourage what in this case appears to be classic forum shopping. *See Republic*, 81 B.R. at 429 (in which the court listed numerous factors with regard to abstention which included "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties").

35. Because the state court is a more convenient and better-suited forum for resolving the dispute between the Stefans and Plaintiff, and for the other reasons

discussed, discretionary abstention is proper under § 1334(c)(1).

36. Authority in this District properly holds that the discretionary abstention provision, unlike the mandatory abstention provision, allows the Bankruptcy Court to render a final decision to abstain. *In re Pankau*, 65 B.R. 204, 209 n. 6 (Bankr.N.D.Ill.1986) (Ginsberg, J.). The *Pankau* court pointed out that the mandatory abstention provision contains a limitation on appealability of an order to abstain, which thus gives rise to a question whether a bankruptcy judge can constitutionally enter a final but nonappealable order. However, there is no similar limitation on appeal from an order for discretionary abstention under 28 U.S.C. § 1334(c)(2). See also *In re Williams*, 88 B.R. 187, 188 n. 2 (Bankr.N.D.Ill.1988) (Ginsberg, J.). However should a higher court determine that this Court cannot render a final decision to abstain, *see e.g. In re Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc.*, 81 B.R. 422, 426 (Bankr.S.D.Tex.1987), these Findings and Conclusions stand as a recommendation to the District Court that the Motion for Discretionary Abstention be granted.

## CONCLUSION

37. Accordingly, by separate order the Court denies Plaintiff's Motion for Preliminary Injunction, and pursuant to 28 U.S.C. § 1334(c)(1), allows the Stefans' Motion for Abstention, but denies relief under 28 U.S.C. § 1334(c)(2).

---

Business Corporation Act, involve unsettled or novel questions of state law.